IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| DONNA DOUGLAS NICHOLS, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 7:06-CV-0196-O |
| § | |
| CLAY COUNTY, TEXAS, et. al., § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Clay County, Scott Hamberger, and Harvey Freeman's Motion for Summary Judgment (filed October 31, 2007) (Dkt. No. 16). After careful consideration of all parties' submissions and the law applicable to the issues before the Court, the Court **GRANTS** this Motion.

**I. BACKGROUND**

Plaintiff, Donna Douglas Nichols ("Nichols" or "Plaintiff") filed suit against Clay County, Texas ("Clay County") and Clay County Deputies Scott Hamberger and Harvey Freeman (collectively, "Deputies" or "Defendants") under 42 U.S.C. § 1983. Nichols claims that her Fourth and Fourteenth Amendment due process rights were violated when the Deputies allegedly arrested her without probable cause using excessive force and that Clay County ratified these unconstitutional acts.[1]

---

[1] The Court does note that the Fourteenth Amendment claims of lack of deliberate indifference and punishment without due process have been abandoned by Plaintiff. *See* Plaintiff's Response to Defendants Motion for Summary Judgment, p.2. Therefore those claims are dismissed against Defendants.

Plaintiff owns two houses situated on adjoining lots at 608 and 612 E. Wichita Street, in Henrietta, Texas. Her primary residence is the house at 608 E. Wichita Street. In December 2004, Plaintiff allowed her daughter, Darcy Nichols, and her grandchild to live rent-free without contract, lease, or other consideration in the house at 612 E. Wichita Falls, Texas. Plaintiff paid all utilities, taxes, and mortgage on both properties.[2]

On the morning of December 4, 2004, Nichols went to the house in which her daughter resided and discovered that her daughter had allowed a friend, David Sauls, to spend the night on the premises. Nichols believed Sauls had a criminal history, and she ordered him to leave the house. He refused to do so. Nichols then called the Clay County Sheriff's Office. Deputies Hamberger and Freeman responded to the call.

Upon their arrival, Plaintiff explained to the Deputies that Sauls was a trespasser and she wanted him to leave. Deputy Hamberger concluded that it was Darcy Nichols, as a tenant, who had the right to determine the occupants of the home. He asked Darcy Nichols if she wanted Plaintiff to leave, and she stated that she did. Deputy Hamberger then demanded Plaintiff leave the premises. Plaintiff refused and reiterated that her daughter was merely a tenant at will and that she was the sole owner of the property. Therefore, she should determine who can remain on the property. The deputies then arrested Nichols for criminal trespass.[3] According to Plaintiff, the officers spun her around, slammed her into a chair, handcuffed her, threw her to the ground face down, and struck her with their knees and fists on her back as she lie on the ground. Plaintiff further alleges the deputies

---

[2] *See* Complaint, p.2; Appx. p. 53; Appx. p.57.

[3] *See* Complaint, p.3; Appx., p. 53-54; Appx. p. 26-27; Appx. p. 48; Appx. p. 57; Appx. p. 60.

2

pulled her out of the house by the handcuffs and threw her face down into the floor of the patrol car. As a result, Plaintiff claims she suffered bruises to various parts of her body and that the handcuffs peeled off a small section of skin on each forearm causing permanent scarring.[4]

Nichols was charged with criminal trespass and resisting arrest.[5] At the jail, Nichols claims she was denied medical treatment for her injuries. However, the officers did photograph her injuries at her request.[6] The same day, Nichols was released on a personal appearance bond and later went to the emergency room for treatment.[7]

Darcy Nichols later refused to press charges against Plaintiff.[8] On May 5, 2005, the Clay County attorney dropped all charges against Plaintiff. Nichols filed a complaint regarding the events surrounding her arrest which was investigated. However, the County Judge concluded that Defendants acted properly.[9]

Plaintiff filed suit against Defendants under 42 U.S.C. § 1983 alleging Fourth and Fourteenth amendment constitutional violations. Specifically, Plaintiff claims Defendants (1) arrested her without probable cause, (2) used excessive force, and (3) violated her due process rights by depriving her of the use and enjoyment of her property. Additionally, Plaintiff claims Clay County ratified the Deputies' unconstitutional conduct thereby creating an unconstitutional official policy.

---

[4] *See* Complaint, p. 4; Appx. p. 54-55; Appx. p. 57; Appx. p. 60.

[5] *See* Appx. p. 35.

[6] *See* Appx. p. 55; *but see* Appx. p. 28; Appx. p. 46; Appx. p. 50

[7] *See* Appx. p. 55; Appx. p. 42.

[8] *See* Appx. p. 44

[9] *See* Appx. p. 62

Plaintiff seeks damages and attorney fees.

On October 31, 2007, Defendants filed a Motion for Summary Judgment on all of Nichols' claims.

## II. ANALYSIS

Plaintiff asserts that Defendants violated her Fourth and Fourteenth Amendment rights under 42 U.S.C. §1983. Defendants argue that Nichols can not establish that the Deputies' actions constituted a constitutional violation, nor that Clay County ratified any unconstitutional acts; therefore, they are protected by qualified immunity. The court GRANTS Defendants' Motion for Summary Judgment as Plaintiff has produced insufficient evidence of any constitutional violation.

### A. Summary Judgment Standard

Summary judgment is proper "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . ." FED. R. CIV. P. 56(c). An issue is material if it involves a fact that might affect the outcome of a suit under governing law. *See Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). The court must decide all reasonable doubts and inferences in the light most favorable to the non-moving party. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Once the moving party has satisfied this burden, the non-moving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The court must inquire as to whether there is sufficient evidence upon which reasonable jurors could properly find by a preponderance of the evidence that plaintiff is entitled to a verdict. *Anderson*, 477 U.S. at 249-50. In other words, summary judgment will be granted "against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A "sufficient showing" consists of more than a scintilla of evidence in support of the moving party's position. *Anderson*, 477 U.S. at 249-50; *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986) (stating that "conjecture alone" was insufficient to raise an issue as to existence of an essential element).

**B.     Qualified Immunity Standard**

The doctrine of qualified immunity shields government employees who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001). The threshold question is

whether, on the plaintiff's version of the facts, the officer's conduct violated a currently-existing constitutional right. *See Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (citing *Saucier v. Katz,* 533 U.S. 194, 200 (2001)). If the plaintiff fails to allege a constitutional violation, then the defendant is entitled to qualified immunity and the court need not inquire any further. *Id*. at 201. If, however, the plaintiff has shown a violation of a constitutional right, the court must then determine whether the defendant's actions were "objectively reasonable" in light of "clearly established law" at the time of the alleged violation. *Id.*; *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001).

### C.  Plaintiff has produced insufficient evidence that Defendants violated her Fourth Amendment constitutional rights.

*Probable Cause*

Plaintiff has produced insufficient evidence that she was arrested without probable cause. Plaintiff argues that by legal definition, Darcy Nichols was not a tenant. *See* Tex. Prop. Code § 92.001(6). Therefore, Plaintiff had the right to determine the occupants of the property. Further, Plaintiff asserts, Defendants did not have probable cause to arrest her because she had committed no offense.[10] "Probable cause exists when the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir.1988) (internal quotation marks omitted). Probable cause is determined based on the totality of facts available to the officer at the time of the arrest, without reference to whether the evidence ultimately proved to be reliable. *Id.* That the evidence eventually turned out to be unfounded or proved insufficient to show commission of a crime is irrelevant to the

---

[10] *See* Plaintiff's Response, p. 9.

determination of probable cause at the time of arrest. *Id*. Additionally, an officer may avoid liability even if he "reasonably but mistakenly conclude[s] that probable cause is present." *Mangieri v. Clifton*, 29 F.3d 1012, 1017(5th Cir. 1994) (internal quotation marks and citation omitted).

Defendants argue that from the facts the deputies were given by Plaintiff at the time, that Darcy was a tenant and lived in the residence, Darcy Nichols was a tenant and therefore had a greater right to possession of the property.[11] *See Arnold v. State*, 867 S.W.2d 378, 379 (Tex. Crim. App.1993) (holding that ownership may be established in criminal trespass cases by proving only a greater right to possession). Therefore, Plaintiff was guilty of criminal trespass. *See* Tex. Penal Code §30.05 (West 2007). The Deputies had authority to arrest Plaintiff, because a peace officer is expressly authorized to arrest an offender without a warrant for any offense committed in his presence or within his view. Tex. Code Crim. Proc., Art. 14.01. Further, Defendants argue that qualified immunity protects them from liability as they had a reasonable belief that Darcy Nichols was a tenant in possession.

Plaintiff has the burden of showing that Defendant lacked probable cause. If Plaintiff fails to make such a showing, then a constitutional right has not been violated and Defendant is entitled to qualified immunity. *See Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir.1998). Here, Plaintiff has not met this burden. Regardless of whether Darcy Nichols was in fact a tenant, the Defendants had sufficient facts to believe that she was a tenant and that Plaintiff was guilty of criminal trespass, thus they had probable cause to arrest Plaintiff. *See Bigford*, 834 F.2d at 1218. Because Plaintiff has failed to allege a constitutional violation, Defendants are entitled to qualified immunity on the

---

[11] *See* Complaint, p. 2 (stating Darcy Nichols was a tenant at will); *see also* Appx. p. 48; Appx. p. 26.

probable cause claim and the court need not inquire any further. *Saucier*, 533 U.S. at 201.

*Excessive Force*

Plaintiff had produced insufficient evidence that the Deputies used excessive force during her arrest. Plaintiff claims Defendants slammed her onto a chair, pulled her out of the house using the handcuffs as a handle, and threw her to the floor of the patrol car.[12] To prevail on an excessive force claim, a plaintiff must establish: "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. Edna*, 410 F.3d 745, 751 (5th Cir. 2005) ; *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000). To state a claim for excessive use of force, the plaintiff's asserted injury must be more than a de minimis injury. *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2005).

In this case, the most substantial injury claimed by Plaintiff is that she suffered bruising, abrasions, and swelling on her wrists due to the Deputies' use of the handcuffs to drag her. For these injuries, the emergency room doctor simply prescribed over-the-counter antibiotics, ice packs, and Tylenol for pain.[13] Minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force. *See Glenn*, 242 F.3d at 314 (stating that "handcuffing too tightly, without more, does not amount to excessive force"); *see Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (finding no excessive force where allegations that the deputies twisted her arms behind her back while handcuffing her, "jerked her all over the carport," and applied the handcuffs too tightly, causing bruises and marks on her wrist); see

---

[12] *See* Appx. p. 54

[13] *See* Appx. p. 19-24, Medical Records

Tarver, 410 F.3d at 751-52 (finding no excessive force where plaintiff suffered contusions of the wrist). Therefore, as a matter of law, Plaintiff's injuries can not support an excessive force claim.

Even assuming Plaintiffs versions of the facts are true, Nichols has not provided sufficient summary judgment evidence to establish Defendants used excessive force. Because Plaintiff has failed to allege a constitutional violation, Defendants are entitled to qualified immunity on the excessive force claim and the court need not inquire any further. *Saucier*, 533 U.S. at 201.

**D. Plaintiff has produced insufficient evidence that Defendants violated her due process constitutional rights under the Fourteenth Amendment.**

Plaintiff has produced insufficient evidence that her due process rights were violated when she was removed from her property during the arrest. Nichols claims her arrest amounted to an unlawful eviction and deprived her of the occupation, use, control, and enjoyment of her property. Plaintiff cites several cases that involved the actual taking of real or personal property to support this proposition.[14] The Fourth Amendment provides in part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. Art. IV. A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Under the Fourteenth Amendment, procedural due process requires notice and a pre-deprivation hearing before property interests are negatively affected by governmental actors. *See Fuentes v. Shevin*, 407 U.S. 67, 80-82 (1972). The Supreme Court has recognized that police officers who participate in dispossessing tenants before proper process has issued engage in an unconstitutional seizure prohibited by the Fourth Amendment. *See Soldal v. Cook County,*

---

[14] *See* Plaintiff's Resp., p. 14-15.

*Illinois*, 506 U.S. 56 (1992).

Here, the evidence does not support the allegation that Defendants evicted Plaintiff or otherwise permanently deprived her of her property or any property interest. Defendants were neither attempting to evict Plaintiff nor assisting in an eviction. Rather, Plaintiff was simply arrested for criminal trespass based on probable cause.[15] Because Plaintiff has failed to allege a constitutional violation, Defendants are entitled to qualified immunity on the due process claim and the court need not inquire any further. *Saucier*, 533 U.S. at 201.

**E. Plaintiff has produced insufficient evidence that Clay County violated a constitutional right.**

Plaintiff has produced insufficient evidence that Clay County implemented an unconstitutional official policy. It is well settled law that municipalities cannot be held vicariously liable under § 1983 for the acts of employees under the theory of respondeat superior. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). For a municipality to be liable, the municipality itself must cause the violation through its official policies or customs. *Id* at 694.

Plaintiff argues that Clay County ratified the unconstitutional actions of the Defendants, and their post hoc review and approval of the actions of deputies was representative of official policy.[16] The Fifth Circuit has stated that in some cases the evidence may show a policymaker ratified a subordinate's illegal conduct, thus putting the force of governmental policy behind it. *See Milam v. City of San Antonio*, 113 Fed. Appx. 622, 626 (5th Cir. 2004). To establish ratification, however, the plaintiff must prove the policymaking authority had actual knowledge of the alleged improper

---

[15] *See* Appx. p. 48; Appx. p. 26.

[16] See Plaintiff's Response, p. 20.

basis of the conduct at issue. *See Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001); *see also Milam*, 113 Fed. Appx. at 628 (stating the ratification theory did not apply to an illegal arrest when the record did not show the policymakers "knew of and approved the illegal character of the arrest, determining that it accorded with municipal policy").

Here, Plaintiff has not provided evidence of either an unconstitutional official policy or persistent, widespread practice which constitutes a custom. Neither has Plaintiff proven that the County had actual knowledge of any illegal conduct pursuant to which the Defendant officers acted in arresting Plaintiff and caused her alleged injuries. Because Plaintiff has failed to allege a constitutional violation, Defendants are entitled to qualified immunity on the due process claim and the court need not inquire any further. *Saucier*, 533 U.S. at 201.

**F. Objections to Summary Judgment Evidence**

Defendant objects to portions of Plaintiff's summary judgment evidence. Specifically, Defendants object to (1) portions of Nichols' Affidavit, and (2) photographs of Nichols' alleged injuries on various grounds under the Federal Rules of Evidence. Because the Court has not relied on this evidence in reaching its conclusions regarding Defendant's motion for summary judgment, the objections are overruled as moot, and the motion to strike is DENIED.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Summary Judgment on all of Plaintiff's constitutional claims.

**SO ORDERED** on this 3rd day of June, 2008.

_____
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**